[No. 39617. Department One. May 8, 1969.]

*In the Matter of the Estate of* RUTH WILSON TOOMEY, *Deceased.*

THE STATE OF WASHINGTON, *Appellant,* v. DAN WANDELL, *as Executor, Respondent.**

*Reported in 454 P.2d 420.

The Attorney General, Henry W. Wager and Timothy R. Malone, Assistants, for appellant.

Elliott, Lee, Carney, Thomas & Smart, by Herman S. Siqueland, for respondent.

Higgins & Fournier, by Theodore R. Fournier, Jr., amicus curiae.

HALE, J.—Ruth Wilson Toomey died August 16, 1965, leaving an estate inventoried and appraised at a fair market value of $674,731.15, subject to federal estate taxes of $81,093.82. The supervisor of inheritance refused to deduct the $81,093.82 from the estate before computing the state inheritance tax. Challenging the supervisor's refusal, the executor for the estate contended and the trial court held that the federal estate tax must be deducted from the appraised value of the estate before the supervisor of the state inheritance tax division can compute the state tax.

The executor also contended and the trial court held that the executor need not have the estate appraised as of the date of death but had the option of designating the date which had been accepted by the treasury department for federal estate tax purposes. The state now appeals the judgment entered upon these rulings.

We think that the Attorney General in his brief has properly stated the issues as follows:

This action concerns inheritance taxation and involves two basic questions: (1) Should the amount of the federal estate tax lien be deducted or excluded from the appraised value of the estate before the state inheritance tax is computed? (2) Does RCW 83.40.040 require that

the state inheritance tax be computed on the value of the estate as of the date of death, by authorizing the use of the alternate date value when elected by the executor under federal law for federal estate tax purposes?

Before reaching these issues, however, a comment on some of the uncertainties arising from a hiatus between the enactment and effective date of the probate code adopted March 20, 1965, seems appropriate. Mrs. Toomey died August 16, 1965. Earlier, in March, the legislature had passed Laws of 1965, ch. 145, p. 1431 (RCW Title 11 (Probate Law and Procedure—1965 Act)), requiring the decedent's personal representatives in RCW 11.44.015 to make an inventory, and providing in RCW 11.44.055 for the appointment of an appraiser. The appraiser is directed in RCW 11.44.065 to ascertain the *fair net value* of each item of the estate. According to RCW 11.99.010, however, the act, with some enumerated exceptions, including RCW 11.44.065, was not to take effect until July 1, 1967. The exceptions were to take effect July 1, 1965, and, thus, RCW 11.44.065 was effective before Mrs. Toomey's death.[1]

Accordingly, despite a lag in the effective date of some sections of the new probate code, the appraiser was under a duty to appraise the estate as stated in RCW 11.44.065:

The appraiser shall determine and state in figures opposite each item contained in the inventory the fair net value thereof, as of the date of decedent's death, after deducting the encumbrances, liens and other secured charges thereon, and shall deliver such inventory and appraisement, certified by him under oath to the personal representative within thirty days following his appointment, unless a longer time shall be granted by the court.

Regardless of whichever section describing the manner of making an inventory be deemed in effect at Mrs. Toomey's death, RCW 11.44.015, effective July 1, 1967, or Rule of

[1] Although 11.44.065 prescribing the duties of appraisers became effective July 1, 1965, 11.44.015, describing the manner of making inventory, did not take effect until July 1, 1967. This court, however, November 22, 1965, adopted Rule 93.06W in identical language to section 11.44.015 with a proviso that it expire July 1, 1967. See Rules of Court, 67 Wn.2d xvii.

Pleading, Practice and Procedure 93.06W, or Rem. Rev. Stat. (Sup.), § 1465, Laws of 1939, ch. 202, § 8, p. 707, the legal effect would be the same. Both sections, new and old, as far as the instant case is concerned, engender the same results in determining which liens or debts shall be deducted from the gross value of the estate before its value for inheritance tax purposes can be ascertained.

Thus, on August 16, 1965, the date of decedent's death, the personal representative, under either the statute then in force or the section later to become effective, would be required to list and describe every lien, encumbrance or other secured burden upon each item of property in the estate so that the appraiser could thereupon deduct them from the gross appraised value of each item. Common sense tells us, for example, that, if a $20,000 house carries a valid and subsisting $10,000 mortgage for value, the net value of the house for inheritance tax purposes must be $10,000, otherwise the estate or the heirs will be paying a tax not only upon the assets but the debts as well.

■ Turning now to the federal estate tax, the estate contends that, among the enumerated liens, encumbrances and other secured burdens upon the several assets, the federal estate tax constitutes a deductible lien against the property of the estate, too, and that the supervisor must, therefore, reduce the value of the estate by the amount of that tax before computing the inheritance tax. Our examination of the statutes, however, leads us to a different conclusion, i.e., that the federal inheritance tax is not such a lien or encumbrance or charge upon the assets of the estate intended by the legislature to be so deducted.

The appraiser's duties, we think, have been outlined explicitly in RCW 11.44.065. Under this section, he shall: (1) Determine the true fair value of each item of property set forth in the inventory, and, thereupon (2) deduct from each item the true amount of any encumbrance, lien, or other secured charge against each such item, and (3) declare the fair net value of each item of the estate after making the above-described deductions.

■ Fair net value for inheritance tax purposes means the fair market value as of the date of death (RCW 83.16.010), after deducting all debts owing by the decedent and deducting state and local taxes due *before* death, and a reasonable sum for funeral and burial costs and court costs and attorney's fees, etc. RCW 83.04.013. The tax shall then be levied upon the remaining fair net value. RCW 83.04.010. Nowhere in the statutes do we find where the personal representative, the appraiser, the supervisor of inheritance or the superior court shall deduct the federal estate tax before computing the inheritance tax. The tax must, therefore, be measured by what is called the fair market value of the property as of the date of death, and the fair market value for purposes of computing the inheritance tax means the total market value of the estate reduced only by the deduction specified by statute. *In re Elvigen's Estate,* 191 Wash. 614, 71 P.2d 672 (1937).

A federal estate tax lien under present statutes does not come into existence until death. Thus, the federal estate tax was neither deductible as an existing lien, encumbrance or secured charge against any of the items of property, under RCW 11.44.065, which provides for the deduction of liens and encumbrances burdening the assets on the date of death, nor as one of the decedent's debts owing during her lifetime as specified in RCW 83.04.013, nor included as one of the enumerated expenditures arising from the costs of funeral, burial and administration also set forth in RCW 83.04.013.

■ The state has plenary power over inheritance taxation; it is within the legislature's power to prescribe the nature, kind, extent and amount of such taxes, and to what degree the estate or the heirs may be taxed or exempt from taxation as conditions of bequeathing, devising and inheriting property. *In re Sherwood's Estate,* 122 Wash. 648, 211 Pac. 734 (1922); *In re Kennedy's Estate,* 188 Wash. 84, 61 P.2d 998 (1936); *Frick v. Pennsylvania,* 268 U.S. 473, 69 L. Ed. 1058, 45 S. Ct. 603, 42 A.L.R. 316 (1925). Therefore, although the legislature, in the exercise of its plenary tax-

ing powers upon the descent, distribution and inheritance of property might have made the federal inheritance tax deductible from the fair market value before computation of the inheritance tax, it is clear that it has not done so.

We thus affirm the recent statement of this court in *In re Carlson's Estate,* 61 Wn.2d 359, 364, 378 P.2d 435 (1963), on the precise question now before us:

> The only logical conclusion to be arrived at from a review of these legislative enactments is that, since April 15, 1961, there has been, and is now, no statutory authority for holding that the amount of federal estate tax paid by the estate of a decedent is deductible as a claim or indebtedness against his estate. Hence, the amount of the inheritance tax due to the state of Washington must be computed as provided in RCW 83.04 without regard to the payment of any federal estate tax.

The next question is whether the valuation of the estate for state inheritance tax puposes must be fixed as of the date of death, or may be fixed as of 1 year after death when so allowed by federal law for federal estate tax purposes.

Under pertinent federal statutes, the administrator, with certain exceptions, has the election for federal estate tax purposes of reporting the gross estate valuation as of the date of death or as of 1 year thereafter. Internal Revenue Code, 26 U.S.C. §§ 2031-32 (1954). Either valuation will be acceptable by the department of the treasury. The estate, for purposes of federal estate taxation, elected here to have the estate appraised as of 1 year after death, which produced an appraised value of $609,725.77 instead of $674,731.15, the date of death appraisal. The estate thus contends that, under pertinent state statutes, a valuation acceptable for federal tax purposes shall govern for state inheritance tax purposes, also.

We think the language of the statute requires that the valuation, even if taken from the federal tax return, must be determined as of the date of death. RCW 83.40.040, the pertinent section, states:

> If after the values have been determined under this title for inheritance tax purposes, the same estate is val-

ued under the federal estate tax statute *and the date of death value of the property*, or any portion thereof, fixed under the federal law, is increased above or decreased below the value theretofore fixed under the inheritance tax provisions of this title, and this valuation under the federal estate tax is accepted by the estate either by agreement or through final determination in the federal court, the value as fixed under the inheritance tax provisions of this title upon such property or portion thereof shall be increased or decreased to this amount.

(Italics ours.)

Aside from the express language of this section, other statutes make it clear that the value of the estate shall be determined as of the date of death. RCW 83.16.010, RCW 11.44.065. *In re Elvigen's Estate*, 191 Wash. 614, 71 P.2d 672 (1937), affirmed that proposition. Although RCW 83.40.040 may permit the executor to elect a valuation acceptable under the federal estate tax procedures, that valuation, we think, must be determined and fixed as of the date of death since RCW 83.40.040 expressly limits the estate's election *to the date of death value of the property*. We conclude, therefore, that it was error for the trial court to reduce the gross valuation of decedent's estate for inheritance tax purposes to that used for federal estate tax purposes determined as of a time subsequent to the date of death.

Reversed.

HUNTER, C. J., NEILL and McGOVERN, JJ., concur.

ROSELLINI, J. (dissenting)—For the reasons stated by Hill, J., in his dissent to *In re Carlson's Estate*, 61 Wn.2d 359, 378 P.2d 435 (1963), I would hold that the federal estate tax must be deducted before computing the taxes owed the state by persons inheriting property in this state.

---

July 10, 1969. Petition for rehearing denied.